## (March 13, 1969)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. FRANK SANTANA, Appellant.

APPEAL from an order of the Supreme Court in Bronx County entered February 29, 1968, which denied, without a hearing, a motion by defendant in the nature of a writ of error coram nobis, to vacate a judgment convicting defendant of the crime of murder in the second degree.

Order entered February 29, 1968, denying defendant's application for a writ of error coram nobis, affirmed.

NUNEZ, J. (dissenting). Defendant moved in the court below for an order in the nature of a writ of error coram nobis vacating the judgment convicting him of murder in the second degree based on his plea of guilty. He claims that the plea was founded solely on his belief that the extensive publicity given his case precluded a fair trial for him and that he was in fact innocent of the crime to which he pleaded guilty. The court denied the motion without a hearing.

Defendant bases his request for relief on the authority of People v. Sepos (16 N Y 2d 662 [1965]), in which the Court of Appeals held that a defendant subjected to prejudicial pretrial publicity who pleads guilty and later claims that he did so because the publicity prevented a fair trial is entitled to a hearing so that the truth of such claim may be ascertained. In my opinion defendant has made a substantial showing of prejudicial publicity. The defendant and his trial counsel have both submitted affidavits stating that the plea of guilty was based upon their belief that the publicity surrounding the case made a fair trial impossible and that a trial would have erroneously resulted in a conviction of first degree murder and a sentence of death.

The moving papers include 233 exhibits consisting of press clippings wherein such epithets as "vicious", "cowardly", "killer", "slayer", "gang chief", "a no good guy from away back", "child of the streets", "tough enough to commit murder" and so forth were hurled at the defendant. In addition to describing defendant in the foregoing and numerous other similar disparaging terms, the press also attributed to the defendant conduct calculated to cause the

public to turn against him. The numerous articles also referred to the defendant's confession. The major source of prejudicial material was attributed by the press to the police and other law enforcement agencies.

During the 39 days between the crime and defendant's plea of guilty the seven New York newspapers published a total of approximately 192 articles, features or editorials which referred to defendant, many of them on the front page. The case was referred to by numerous well-known persons, including writers, the then Mayor of the City of New York, the Attorney-General, the Bronx Borough President, and other prominent public officials. The press constantly sought to contrast the deceased with defendant. Thus the press announced that the deceased was " a good boy in every sense of the word " and was " not a member of any gang." It described the deceased as a " conscientious student," an " honor student ", an " innocent victim " as " the kind of kid who would be fitted into one of those magazine family groups that illustrate the best middle class American life," as " everything that Santana was not."

The defendant was only 17 years of age. He was sentenced to the exceptionally long term of 25 years to life, a sentence very seldom imposed for murder in the second degree. The severe sentence, the manner in which the crime was committed, the extreme youth of the defendant, the extensive evidence submitted in support of the motion, including an affidavit by a member of the bar, and the definite statement by both defendant and his counsel that the plea was entered solely because they were both afraid defendant would be sentenced to death due to the unfair publicity which had aroused the people in The Bronx against the defendant, constitute a substantial showing of prejudicial publicity entitling the defendant to a hearing upon his motion.

For the foregoing reasons the order appealed from should be reversed and the matter remanded for a hearing on defendant's claim.

Stevens, P. J., Tilzer, McGivern and Macken, JJ., concur in decision; Nunez, J., dissents and votes to reverse and remand for a hearing, in opinion.

Order affirmed, etc.